E-FILED
Thursday, 19 November, 2009  03:16:16 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

NANCY MASON,

                              Plaintiff,

          v.

THE UNIVERSITY OF ILLINOIS,

                              Defendant.

Case No.  09-2282

Judge

Magistrate

**Complaint for Violations of Title VII of the Civil Rights Act of 1964, as amended,
and the Age Discrimination in Employment Act**

Plaintiff, Nancy Mason, by her attorney, Deanne S. Medina, for her complaint against The University of Illinois, alleges and states as follows:

### Introduction

1.        Nancy Mason, a female, age 56, has been employed by The University of Illinois since 1981.  During Ms. Mason's employment, she has worked as a firefighter, EMT and has taught at the University's Fire Service Institute, among many other duties.  Ms. Mason was named as the Program Director of Hazardous Materials and Terrorism in 2005.  In 2005, she was given an assistant who was male, much younger than her and who had less than one year of experience in a university setting.  Shortly thereafter, in early 2006, her job responsibilities were stripped from her and given to the younger male.  She complained of discrimination based on gender and age.  She was then moved to a different department with considerably less responsibility and less opportunity for promotion and earning potential1.

### Parties

2.        Plaintiff, Nancy Mason, (hereinafter "Nancy" or "Ms. Mason") is a female over the age of forty and is a citizen of the State of Illinois and resides within the territorial limits of the United States District Court for the Central District of Illinois, Urbana Division.

3. On information and belief, Defendant, The University of Illinois, (hereinafter "U of I") exists and does business within the territorial limits of the United States District Court for the Central District of Illinois, Urbana Division.

## Jurisdiction

4. This action is brought for violations of Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act. Jurisdiction is founded upon 28 U.S.C. §1331.

5. Plaintiff filed her charge of discrimination at the Equal Employment Opportunity Commission in June of 2007.

6. Plaintiff received her Notice of Right to Sue on August 21, 2009 so this complaint is within the 90 day filing period and is timely.

## Venue

7. Venue is proper in this Court pursuant to 28 U.S. C. §1391(b) as, on information and belief, Defendant is located in this District and the facts giving rise to this cause of action occurred in this District.

## Events

8. Ms. Mason began her career with the University of Illinois Fire Department in 1981 as a Firefighter.

9. In 1988, Ms. Mason began working at the University of Illinois Fire Service Institute ("Institute") as an instructor.

10. As the years passed, Ms. Mason took on more and more responsibility and duties at the Institute including but not limited to, overseeing the fire prevention program, writing curriculum, writing articles, traveling statewide to do training, recruiting, overseeing the Hazardous Materials program, planning and attending conferences, soliciting grant funding, developing a promotional system exam, managing personnel, managing grant monies, and writing bid proposals, among many other responsibilities.

11.     Throughout Ms. Mason's career, she has received favorable reviews.

12.     In 1995, Ms. Mason received the highest rank within the Institute which was Fire Educational Specialist.  There was only one other employee at that level; a male, Dave Clark.

13.     By 1998, Ms. Mason was receiving more than $250,000 in grants to run the Hazardous Material program and all of it came from grants that she had written.

14.     That same year, Richard Jaehne was named the director of the Institute.

15.     Shortly after he began, Jaehne promoted Dave Clark to Deputy Director.

16.     In 1999, Ms. Mason's title was changed to Program Director for Hazardous Materials.

17.     Throughout the years, Ms. Mason continuously took on tasks that nobody else wanted to do; yet received no extra pay or recognition.

18.     In or around 2001, Jaehne gave Ms. Mason a new title of Program Director for Hazardous Materials and Terrorism.

19.     In or around 2005, Jaehne promoted John McCastland as Associate Director of the Institute.

20.     McCastland was a former Fire Chief and had never worked for the Institute.

21.     At the time of the promotion, Jaehne gave authority for the expenditure of the Homeland Security Funding to McCastland.

22.     The Homeland Security funds supported Ms. Mason's programs.

23.     This authority was given, despite the fact that McCastland had never attended a course taught by the Hazardous Materials or Terrorism staff, nor had he ever written a grant or had he completed grant reports.

24.     Ms. Mason protested the transfer of authority because McCastland was very outspoken about his disdain for the Hazardous Materials program.

25.     After that, she was reprimanded by Jaehne for statements McCastland stated she had made at a conference in Colorado, although McCastland only attended a few of the sessions and the other attendees from the Institute said she had not made the statements.

26.     During staff meetings, McCastland would go around the room having each person report on their program; however, he repeatedly would skip over Ms. Mason.

27.     In April of 2005, Jaehne hired Chris Downey, a young male, who had no experience at the Institute, to assist Ms. Mason.

28.     Ms. Mason was told she could give daily orders to Downey but that he would not report to her but to Dave Clark.

29.     Despite the fact that Downey was supposed to be doing assignments for Ms. Mason, McCastland would have him out driving around or following Ms. Mason into meetings and taking notes of what she said.

30.     In December of 2005, Jaehne advised Ms. Mason that he she was being relieved of her title of Program Manager for Hazardous Materials and that he was giving it to Chris Downey.

31.     Jaehne also advised her that her new title would be Program Director of CBRNE.

32.     Downey would be in charge of the grant that Ms. Mason had solicited and obtained and Ms. Mason would be responsible for team training and creating curriculum.

33.     Furthermore, all of Ms. Mason's staff would be reporting to the business manager and to McCastland.

34.     Ms. Mason was given no reason for the change of duties or why Downey had been given her title.

35.     In February of 2006, Jaehne advised Ms. Mason that he did not trust her and was removing all remaining responsibilities from her and giving them to Downey.  He advised her he was not certain what he was going to do with her.

36.     Jaehne never gave a reason to Ms. Mason as to why he did not trust her or why he believed Downey, who had relatively no experience, was better equipped to handle the job responsibilities than Ms. Mason.

37.     Jaehne also informed Ms. Mason that she had to move out of her office of eighteen years and into a smaller office because McCastland would be assuming her office.

38.     In an all-staff meeting Jaehne informed the staff that in order to transfer the "best practices" of the Institute to all of the Institute, he had asked her to take another position at the Institute even though most of them understood that to mean that she had been demoted.

39.     Ms. Mason's staff was broken up and they were reporting to various individuals.

-4-

40.     In January of 2006, Ms. Mason met informally with an individual from the Academic Human Resources Office to determine what she could do about her situation and advised them she believed she was being singled out because of her gender and her age.

41.     After that meeting, another meeting took place with Ms. Mason, the HR representative and her Union representative.  Both advised her that she could file a grievance but that they could not guarantee that she would not be terminated.

42.     Fearful that she would lose her job and needing the income to support her family, Ms. Mason decided not to file a grievance at that time.

43.     McCastland was hostile towards her and women in general both privately and in staff meetings.

44.     He would make derogatory comments about women, minorities, gays and lesbians and even stated that sexual harassment training had no place in the fire service.

45.     In July of 2006, Jaehne sent an email to Ms. Mason which was also cc'd to the head of Human Resources and the head of the department.

46.     The email stated that Ms. Mason was not meeting her job obligations and he also accused her of calling a volunteer fire chief a member of the Ku Klux Klan during a training session.

47.     When Ms. Mason responded to the email and the allegations, Jaehne became very upset with her for including the HR head and the department head on the email.

48.     Around this same time, McCastland had moved into Ms. Mason's old office which was right next door to her new one.

49.     He would repeatedly make comments to others within earshot of Ms. Mason such as "shots fired; she will be gone soon" and "I told you we would get rid of her; just wait."

50.     On one occasion, Dave Clark was standing in Jaehne's doorway right by Ms. Mason's office and said to McCastland, "we have the letter so now she will be out of here."

51.     Ms. Mason assumed they were talking about her since there were very few women in the department.

52.     At the end of July 2006, the head of the department, Dr. McCoy, met with Ms. Mason, Jaehne and Dave Clark to discuss the allegations that Ms. Mason was not performing her job.

53.     After a bit of conversation, Dr. McCoy left the room to go speak to an HR rep and upon her return she was listening at the door as Jaehne and Clark verbally insulted Ms. Mason and made comments to her such as, "you shouldn't be so sensitive" and "well, you knew Chris would replace you sometime" to which he laughed and continued "but it was just a little earlier than you had planned; we could not have *him* working for *you*." (Emphasis added).

54.     Dr. McCoy then stopped the conversation and asked Jaehne and Clark to leave.  She then proposed that Ms. Mason come work for her writing grants for  three departments; Department of Aviation, the Fire Service Institute and the Police Training Institute if she would agree not to file a grievance.

55.     Ms. Mason agreed to do so to get out of her situation and began working for Dr. McCoy in August of 2006.

56.     In September of 2006, Dr. McCoy left the University.

57.     Ms. Mason was assigned to work for Virginia Davis who was a personal friend of McCastland.

58.     Ms. Mason's position was changed to Grant Development Specialist and she was reporting to three different departments researching grants and providing details to each of the program managers.

59.     Shortly after she was moved, Ms. Mason was advised that there likely would not be enough funding to keep her on in the Grant Development Position and that she would probably lose her job even thought she was only four years from retirement.

60.     Had she not been removed from her position at the Institute, the grant funds that she had solicited and received would have easily carried her through the four years until her retirement.

61.     As a result of the likely position termination, Ms. Mason once again complained to Human Resources in January 2007 but never received a response to her complaint.

62.     While she remains employed by U of I, she has never returned to the Institute where she served 18 years and has lost valuable promotional and earning opportunities.

**COUNT I**
**Demand for Relief for Gender Discrimination**
**against Defendant for violation of Title VII**

-6-

**of the Civil Rights Act of 1964,  as amended**

63.     Plaintiff restates and realleges paragraphs 1 through 62 as paragraph 63 of this Count I.

64.     Defendant discriminated against Plaintiff on the basis of her gender when it removed her from her job duties and replaced her with a man with less experience and who was less qualified.

65.     As a result of these violations, Plaintiff has suffered loss of income, benefits, and other compensation.

66.     Additionally, Plaintiff has suffered embarrassment, degradation, humiliation and pain and suffering warranting the award of compensatory damages.

67.     In light of Defendant's knowledge of the statute and willful disregard of its provisions, its conduct warrants the imposition of punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant for wages, salary, employment benefits, and other compensation denied or lost by reason of Defendant's violation, in ana mount to be determined at trial; the interest on this amount, calculated by the prevailing rate; compensatory damages and punitive damages in an amount to be determined at trial; reasonable attorneys fees; costs; and for such other and further relief this Court deems just and equitable.

### COUNT II
**Demand for Relief for Retaliation**
**against Defendant for violation of Title VII**
**of the Civil Rights Act of 1964,  as amended**

68.     Plaintiff restates and realleges paragraphs 1 through 62 as paragraph 68 of this Count II.

69.     Defendant retaliated against Plaintiff when it removed her from her duties and moved her from her department to another with significantly less experience after she complained of gender discrimination.

70.     As a result of these violations, Plaintiff has suffered loss of income, benefits, and other compensation.

71.     Additionally, Plaintiff has suffered embarrassment, degradation, humiliation and pain and suffering warranting the award of compensatory damages.

72.     In light of Defendant's knowledge of the statute and willful disregard of its provisions, its conduct warrants the imposition of punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant for wages, salary, employment benefits, and other compensation denied or lost by reason of Defendant's violation, in ana mount to be determined at trial; the interest on this amount, calculated by the prevailing rate; compensatory damages and punitive damages in an amount to be determined at trial; reasonable attorneys fees; costs; and for such other and further relief this Court deems just and equitable.

### COUNT III
### Demand for Relief for Age Discrimination
### against Defendant for violation of
### The Age Discrimination in Employment Act

73.     Plaintiff restates and realleges paragraphs 1 through 62 as paragraph 73 of this Count III.

74.     Defendant discriminated against Plaintiff on the basis of her age when it gave her job duties to someone who was considerably younger and who had much less experience.

75.     As a result of these violations, Plaintiff has suffered loss of income, benefits, and other compensation.

76.     In light of Defendant's knowledge of the statute and willful disregard of its provisions, its conduct warrants the imposition of liquidated damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant for wages, salary, employment benefits, and other compensation denied or lost by reason of Defendant's violation, in ana mount to be determined at trial; the interest on this amount, calculated by the prevailing rate; liquidated damages; reasonable attorneys fees; costs; and for such other and further relief this Court deems just and equitable.

**COUNT IV**
**Demand for Relief for Retaliation**
**against Defendant for violation of**
**The Age Discrimination in Employment Act**

77.     Plaintiff restates and realleges paragraphs 1 through 62 as paragraph 77 of this Count IV.

78.      Defendant retaliated against Plaintiff when it took away her title and moved her to a new department with significantly less responsibility after she complained of age discrimination.

79.     As a result of these violations, Plaintiff has suffered loss of income, benefits, and other compensation.

80.     In light of Defendant's knowledge of the statute and willful disregard of its provisions, its conduct warrants the imposition of liquidated damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant for wages, salary, employment benefits, and other compensation denied or lost by reason of Defendant's violation, in ana mount to be determined at trial; the interest on this amount, calculated by the prevailing rate; liquidated damages; reasonable attorneys fees; costs; and for such other and further relief this Court deems just and equitable.

Respectfully submitted,

 s/Deanne S. Medina
One of the Attorneys for Plaintiff

Deanne S. Medina
Atty No.  6273485
Medina Law
171 S. Oak Park Ave.
Oak Park, IL 60302
(708)528-1518 (p)
(708)434-0391 (f)
dmedina@medinalawonline.com